UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re:                                          Case No. 1-18-44707-ess
                                                Chapter 7
ETHEL WILLIAMS,

                              Debtor.
----------------------------------------------------------x

ETHEL WILLIAMS,

                              Plaintiff,        Adv. Pro. No. 1-18-01103-ess

        -against-

WELLS FARGO BANK, N.A.,
AMBER A. JUREK, JASON B. DESIDERIO,
ALEXANDRA R. HEANY, VASILIOS C.
ANGELLOS, MICHAEL V. MARGARELLA,
AA PROPERTIES 501 LLC, NICHOLAS J.
MATTIA, REED SMITH, LLP, ARNOLD W.
DRUCKER, ABRAHAM ABOUTABOUL,
TIMOTHY J. SLOAN, BILL BECKMANN,
MORTGAGE ELECTRONIC RESOURCES SYSTEMS,
COREY DUBNOFF, AMERICAN FINANCIAL
RESOURCES INC.

                              Defendants.
----------------------------------------------------------x

## MEMORANDUM DECISION ON THE MOTIONS
## TO DISMISS THE SECOND AMENDED COMPLAINT

*Appearances:*

Ethel Williams                        Christopher A. Lynch, Esq.
212-06 99th Avenue                    Reed Smith LLP
Queens Village, NY  11428             599 Lexington Avenue
   *Plaintiff, pro se*                30th Floor
                                      New York, NY 10022
                                        *Attorneys for Defendants Wells Fargo*
                                      *Bank, N.A., Michael V. Margarella, Reed*
                                      *Smith, LLP, Timothy J. Sloan, Bill Beckmann,*
                                      *and Mortgage Electronic Registration*

*Systems*

Nicole Marie Black, Esq.
Gross Polowy, LLC
900 Merchants Concourse, Suite 412
Westbury, NY 11590
   *Attorneys for Defendants Amber A. Jurek*
*and Alexandra R. Heany*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Plaintiff Ethel Williams commenced this adversary proceeding against several lenders, their attorneys, and others in connection with the foreclosure sale of her home in 2017.  In a series of complaints, she claims, in substance, that the lenders committed a host of statutory violations in administering and foreclosing upon the mortgage and violated the automatic stay by filing responsive papers post-petition in the related state court foreclosure proceeding.[1]

Before the Court is the motion to dismiss the Second Amended Complaint filed by Defendants Wells Fargo Bank, N.A. ("Wells Fargo"), Michael V. Margarella, and Reed Smith LLP ("Reed Smith"), and later joined by Defendants Bill Beckmann, Mortgage Electronic Registration Systems ("MERS"), and Timothy J. Sloan (together, the "WF Defendants"), and the motion to dismiss the Second Amended Complaint filed by Alexandra R. Heany and Amber A. Jurek (together, the "Individual Defendants," and together with the WF Defendants, the "Defendants").  The WF Defendants bring their motion to dismiss (the "WF Motion to Dismiss") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.  The Individual Defendants bring their motion to dismiss (the "ID Motion to Dismiss") pursuant to Rule 12(b)(6).

## The Parties

---

[1]  Ms. Williams is proceeding *pro se* in this adversary proceeding.  The Court notes that, as the Second Circuit has observed, courts should "liberally construe [such] complaints . . . to state the strongest arguments that they suggest" and "a complaint filed pro se is held to a less stringent pleading standard than one filed by counsel."  *Frederick v. Wells Fargo Home Mortg.*, 649 F. App'x 29, 30 (2d Cir. 2016).

Ms. Williams is the debtor in the main bankruptcy case, and is the co-obligor, together with Aazim Green, on a loan ending in 1960 (the "Loan") secured by a mortgage on real property located at 212-06 99th Avenue, Queens Village, New York 11429 (the "Property").

Each of the defendants has some connection to Ms. Williams' home mortgage, the foreclosure action concerning the property, and related proceedings. Defendant Wells Fargo initiated a foreclosure action with respect to the Property in New York Supreme Court, Queens County, Index No. 7127/2013 (the "Foreclosure Action"), naming Ms. Williams and Mr. Green as defendants. Ms. Williams identifies Defendants Ms. Jurek, Reed Smith, Mr. Margarella, Mr. Desiderio, and Ms. Heany as the attorneys and law firm that represented Wells Fargo in the Foreclosure Action. *See* Amended Complaint ("Am. Compl."), ECF No. 5, at 1. And Mr. Sloan is an executive at Wells Fargo. *See* Supplemental Affirmation in Further Support of WF Defendants' Motion to Dismiss Plaintiff's Second Amended Adversary Complaint ("WF Supp. Affirm."), ECF No. 24, ¶ 10.

Defendant American Financial Resources, Inc. was the original creditor on the Loan. Second Amended Complaint ("Second Am. Compl."), ECF No. 17, ¶ 3. Ms. Williams alleges, in substance, that MERS held the Loan before transferring it to Wells Fargo. Second Am. Compl. ¶ 4. Defendant Mr. Beckman is a former executive of MERS. *See* WF Supp. Affirm. ¶ 10. Defendant Abraham Aboutaboul is an executive of Defendant AA Properties 501 LLC ("AA Properties"), which currently owns the Property. Second Am. Compl. ¶ 6. Defendants Arnold W. Drucker and Nicholas J. Mattia appeared as counsel to AA Properties in proceedings related to the Foreclosure Action. *See* Am. Compl. Exh. D (opposition of AA Properties to a post-foreclosure sale order to show cause by Ms. Williams). And finally, defendant Vasilios C.

Angellos was the referee at the foreclosure sale of the Property.[2]

**Background**

*Ms. Williams' Bankruptcy Case*

On March 26, 2018, Ms. Williams filed a petition for relief jointly with Mr. Green under Chapter 7 of the Bankruptcy Code. Case No. 18-41652, ECF No. 1. On August 1. 2018, Ms. Williams' bankruptcy case was severed from Mr. Green's case. Case No. 18-41652, ECF No. 21. *See* Case No. 18-44707, ECF No. 1 (Order Severing Case). And on January 4, 2019, Ms. Williams received a discharge. Case No. 18-44707, ECF No. 24.

*This Adversary Proceeding*

The Complaint

On September 11, 2018, Ms. Williams commenced this adversary proceeding by filing a complaint against Wells Fargo, Ms. Jurek, Mr. Desiderio, Ms. Heany, and Mr. Angellos (the "Complaint"). Adv. Pro. No. 18-01103, ECF No. 1. In the Complaint, she asserted claims under the Truth in Lending Act ("TILA"), the Fair Credit Reporting Act ("FCRA"), and the Fair Debt Collection Practices Act ("FDCPA"). She requested that this Court dismiss the Foreclosure Action against her, offset any judgment this Court may grant to the Defendants with "real or statutory damages" to her, award her costs and disbursements, and grant such further relief as the Court may find just and proper.

The Amended Complaint

On October 22, 2018, Ms. Williams filed an Amended Complaint, which names four additional defendants – Mr. Margarella, Reed Smith, AA Properties, and Mr. Mattia. In the Amended Complaint, Ms. Williams adds claims for violations of the automatic stay, states that

---

[2] Defendant Corey Dubnoff's relation to this proceeding is not clear from the record.

Defendant AA Properties "has not replied to Notice of Bankruptcy to this Court within the statute of limitations and is therefore subject to this Court's default actions" (Am. Compl. ¶ 7), and requests that this Court "vacate judgment in the lower court" – that is, the judgment of foreclosure (Am. Compl. at 4).

On November 21, 2018, the WF Defendants responded to the Amended Complaint by moving to dismiss. Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint (the "WF Supp. Mem."), ECF No. 10. That same day, the Individual Defendants filed an Answer to the Amended Complaint (the "ID Answer"). ECF No. 11.

The Court held a pre-trial conference in this adversary proceeding on December 11, 2018, and set a schedule for briefing and argument on the WF Defendants' Motion to Dismiss. In a scheduling order entered the next day, the Court directed Ms. Williams to file any opposition to the Motion to Dismiss by December 28, 2018, and the WF Defendants to reply by January 4, 2019. ECF No. 12. Ms. Williams did not file opposition to the Motion to Dismiss by the December 28 deadline, and on January 4, 2019, the WF Defendants filed a Reply of WF Defendants' Motion to Dismiss (the "WF Reply"). ECF No. 14.

On January 9, 2019, Ms. Williams filed opposition to the Motion to Dismiss in the form of Plaintiff's Affirmation in Opposition to Defendant's Answer of Amber A. Jurek and Alexandra R. Heany (the "Williams Opp. Affirm."), ECF No. 15, and Plaintiff's Motion for Default Summary Judgment Against WF Defendants, ECF No. 16.

The Second Amended Complaint

On January 9, 2019, Ms. Williams served the Second Amended Complaint, adding as defendants Mr. Drucker, Mr. Aboutaboul, Mr. Sloan, Mr. Beckman, MERS, Corey Dubnoff, and American Financial. The Second Amended Complaint also sets forth arguments in opposition to

the WF Defendants' Motion to Dismiss.

Following a pre-trial conference held on January 15, 2019, the Court set a new briefing schedule to permit the parties to address the Second Amended Complaint in the pending motion to dismiss. And on January 29, 2019, the WF Defendants filed a Supplemental Affirmation in Further Support of the WF Defendants' Motion to Dismiss, addressing the allegations raised in the Second Amended Complaint, and stating that they "incorporate all prior arguments submitted in support of the Motion to Dismiss." WF Supp. Affirm. ¶ 8. On February 8, 2019, the Individual Defendants filed their Affirmation with Citation to Legal Authority in Support of Motion to Dismiss [the Second Amended] Complaint (the "ID Supp. Affirm."). ECF No. 25.

Thereafter, Ms. Williams filed several additional documents addressing the arguments made in the Defendants' motions to dismiss the Second Amended Complaint. On February 12, 2019, Ms. Williams moved for leave to file a further amended complaint by filing an Affidavit in Support of Plaintiff's Request for Leave to Amend Complaint (the "Williams Mot. for Leave"). ECF No. 27. On February 13, 2019, she filed a motion seeking (i) to strike the WF Defendants' Supplemental Affirmation in Further Support of WF Defendants' Motion to Dismiss, (ii) an order of summary judgment in her favor, and (iii) to compel production of discovery related documents, information, and responses to interrogatories (the "Williams Omnibus Mot."). ECF No. 28. On March 6, 2019, Ms. Williams moved under Rule 7012(f) to strike the WF Defendants' Supplemental Reply Affirmation (the "Williams Mot. to Strike"). ECF No. 31. Finally, on March 21, 2019, Ms. Williams filed an application in support of her motion for summary judgment (the "Williams App. in Supp."). ECF No. 33. In substance, the Motion for Leave, the Omnibus Motion, the Motion to Strike, the Motion for Default Summary Judgment, and the Application in Support of Summary Judgment serve as – and will be construed as – Ms.

Williams' opposition to the WF Defendants' Motion to Dismiss.

On February 26, 2019, the WF Defendants filed a Supplemental Reply Affirmation in Further Support of the WF Defendants' Motion to Dismiss Plaintiff's Second Amended Adversary Complaint (the "WF Supp. Reply Affirm.").  ECF No. 29

From time to time, and on June 16, 2020, the Court held continued pre-trial conferences and heard argument on the Motions to Dismiss, at which Ms. Williams, the WF Defendants, and the Individual Defendants appeared and were heard, and the record was closed.

*The Allegations of the Second Amended Complaint*

The Court accepts the following facts from Ms. Williams' pleadings as true for the purpose of deciding these Motions to Dismiss.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (accepting the plaintiff's factual allegations as true).  Ms. Williams is the debtor in the main bankruptcy case, Case No. 18-44707, and is domiciled in the State of New York.  Second Am. Compl. ¶¶ 1, 2.  She was the owner of the real property located at 212-06 99th Avenue, Queens Village, New York 11429 (the "Property"), and made payments on the Property pursuant to the terms of a fixed rate note secured by a mortgage, with the loan number ending 1960 – the Loan – at a six percent interest rate, from June 6, 2008 to November 2017. Second Am. Compl. ¶¶ 2, 3, 7, 15.  Following her purchase of the Property in June 2008, Ms. Williams maintained the Property and made "necessary upgrades, improvements to the heating, cooling, plumbing, physical security and property."  Second Am. Compl. ¶ 18.

Ms. Williams alleges that a search of property records conducted through ACRIS, a property records search tool affiliated with the New York City Department of Finance's Office of the City Register, revealed that Defendant MERS was the creditor with respect to the Loan on the Property as of September 2012, before Wells Fargo replaced MERS as the creditor.  Second

Am. Compl. ¶¶ 4, 16.  She alleges that she made "joint payments" on the Loan, in the following amounts: (i) $17,667 to American Financial, the original creditor; (ii) $194,334 to Wells Fargo, the bank that initiated the Foreclosure Action; and (iii) $85,000 in payments for maintenance, upgrades, and improvements to the Property.  Second Am. Compl. ¶¶ 3, 5, 19-21.

Ms. Williams alleges that beginning in November 2008, the mortgage payments increased to a rate that she could not afford.  Second Am. Compl. ¶ 24.  She also alleges that in 2012, she was diagnosed with cancer, and unable to make payments on the Property or appear in any proceedings concerning the Property.  Second Am. Compl. ¶ 26.  Ms. Williams states that she "failed to make two timely payments" on the Property in 2012, and thereafter, Wells Fargo initiated the Foreclosure Action.  Second Am. Compl. ¶ 17.[3]  She further alleges, in substance, that Wells Fargo demanded the full amount of the debt on the Property in the Foreclosure Action, rather than seek only that she cure the recent delinquencies on her account.  *Id.*

The record of the Foreclosure Action, appended as Exhibit F to the Amended Complaint, shows that the state court denied Wells Fargo's motion for judgment of foreclosure by order dated February 11, 2014, based upon several grounds:

> Plaintiff's application was not filed until October 28, 2013 and is untimely. Plaintiff fails to offer any explanation for the delay.
> Moreover, contrary to plaintiff's contentions, the application fails to comply with Administrative Order 431-11.  On October 20, 2010 the Chief Judge of the Courts issued an Administrative Order (AO 548-10, as amended by AO 431-11) which requires that an attorney for plaintiff in residential foreclosure

---

[3]  The WF Defendants provide a chronological summary of the Foreclosure Action, and Ms. Williams does not dispute these facts.  Wells Fargo obtained the Judgment of Foreclosure on September 17, 2017.  The Property was sold in a Sheriff's Sale on October 13, 2017.  Ms. Williams filed a post-Sheriff's Sale motion on February 23, 2018, seeking to vacate the sale (the "First Motion to Vacate"), which Wells Fargo opposed.  On March 26, 2018, Ms. Williams filed her Chapter 7 bankruptcy case in this Court.  Thereafter, the state court denied the First Motion to Vacate.  On June 7, 2018, Ms. Williams filed a second motion to challenge the Sheriff's Sale (the "Second Motion to Vacate"), and Wells Fargo filed written opposition in response to that motion.  WF Supp. Mem. at 19.

> action certify the accuracy of the papers filed in support of the action by
> submitting an affirmation from the attorney that he or she communicated with a
> representative of the plaintiff and was informed that the representative personally
> reviewed plaintiff's documents and records relating to the case, reviewed the
> summons and Complaint and all other papers filed in support of the foreclosure,
> and confirmed the accuracy of the court filings and the notarizations contained
> therein.
>
> Although plaintiff filed the required attorney's affirmation on May 30,
> 2013, the affidavit of merit in support of the motion is dated October 15, 2013.
>
> As the attorney's affirmation fails to confirm the accuracy of all court
> filings and notarizations, and specifically fails to confirm the accuracy of the
> affidavits submitted in support of the motion, plaintiff's motion is premature.
>
> Accordingly, the motion is denied, in its entirety.

Am. Compl. Exh. F.  *See* Second Am. Compl. ¶ 28 (noting that the state court denied Wells

Fargo's motion seeking foreclosure "in its entirety for failing to certify the accuracy of the

attorney's filed documents").

Based upon the state court's decision, Ms. Williams questions Wells Fargo's standing to

foreclose on the Property.  She further states that Wells Fargo's failure to cure the deficiencies

identified by the state court prompted her to initiate this adversary proceeding.  Second Am.

Compl. ¶¶ 29-30.

Specifically, Ms. Williams states that Wells Fargo and its attorneys "do not appear to

possess the requested information" missing from the record of the Foreclosure Action when the

state court denied Wells Fargo's initial motion for a judgment of foreclosure, and further alleges,

in substance, that Wells Fargo and its attorneys have not presented evidence demonstrating Wells

Fargo's entitlement to foreclose on the Property.  Second Am. Compl. ¶ 29.  And Ms. Williams

alleges that her efforts to obtain the documents necessary to establish standing to foreclose have

not been successful.  For example, Ms. Williams states that she contacted Wells Fargo's

customer service representatives "prior to October 10, 2018" and requested that Wells Fargo

"provide copies of loan modification requests, payment statements and transfer of title from the

original 'creditor' American Financial Services, Inc. to Wells Fargo Bank, N.A. as the current 'creditor.'" Second Am. Compl. ¶ 22. In that communication, Ms. Williams sought the original or a certified copy of the deed of trust for the Property, along "with a lost note affidavit included with chain of title and signed by an authorized agent." Second Am. Compl. ¶ 23.

Ultimately, Ms. Williams states that a judgment of foreclosure was entered in the Foreclosure Action, and a sheriff's sale of the Property occurred in 2017. Second Am. Compl. ¶ 24. Defendant Mr. Aboutaboul of Defendant AA Properties purchased the Property at the Sheriff's Sale. Second Am. Compl. ¶¶ 6, 18.

Ms. Williams alleges that after the foreclosure, Mr. Aboutaboul sought to evict her from the Property. Second Am. Compl. ¶ 6. Ms. Williams states that "this injury deprives my family and self, not only [of] property, but monies paid" in connection with the Loan on the Property. Second Am. Compl. ¶ 25. *See* Second Am. Compl. ¶ 44. Ms. Williams argues that, "at the least," she is entitled to receive a "full refund of all previous payments made to any Creditor," as the Sheriff's Sale of the Property satisfied the debt in full. *Id.*

Ms. Williams requests damages in the amount of $294,000, representing the payments that she made on the mortgage on the Property from June 6, 2008 through November 2017, and for maintenance and improvements on the Property. Second Am. Compl. ¶¶ 7, 10. She also seeks injunctive relief in connection with alleged violations of the automatic stay. Second Am. Compl. ¶ 8; Am. Compl. ¶ 4, Exhs. B and C. And she seeks a determination of the Foreclosure Action and foreclosure judgment entered in state court. Second Am. Compl. ¶ 9.

_The WF Defendants' Motion to Dismiss_

On November 21, 2018, the WF Defendants moved to dismiss this case. Ms. Williams opposes the relief sought by the WF Defendants, and on January 9, 2019, she filed an affirmation

in opposition to the WF Motion to Dismiss.  Williams Opp. Affirm.  Ms. Williams also advances arguments in opposition to the WF Motion to Dismiss in several additional filings, including the Second Amended Complaint filed January 9, 2019, the Motion for Leave dated February 12, 2019, the Omnibus Motion dated February 13, 2019, and the Motion to Strike dated March 6, 2019.

On January 4, 2019, the WF Defendants filed a Reply in further support of the WF Motion to Dismiss.  After Ms. Williams filed the Second Amended Complaint, the WF Defendants filed a Supplemental Reply in further support of their Motion to Dismiss, in which they incorporate all prior arguments made in support of the Motion to Dismiss.  Finally, the WF Defendants filed a supplemental reply in further support of the Motion to Dismiss, in the form of an affidavit.

The WF Defendants seek dismissal of the Second Amended Complaint with prejudice, on grounds that Ms. Williams does not state a plausible claim upon which relief can be granted. They state that even if, "on an extremely generous read," the Court is able to discern a cause of action, the Court lacks subject matter jurisdiction to determine Ms. Williams' claims under the *Rooker-Feldman* doctrine and the *Younger* abstention doctrine.  WF Supp. Mem. at 6.  The WF Defendants argue that Ms. Williams is, in effect, attempting to use this adversary proceeding to attack the judgment of foreclosure entered by the New York state court.  *Id.*

Finally, the WF Defendants respond to Ms. Williams' claim that Reed Smith LLP and Mr. Margarella violated the automatic stay by filing the post-petition Notice of Entry of the Order Denying Ms. Williams' motion to vacate the Sheriff's Sale (the "Motion to Vacate").  WF Supp. Mem. at 18-20.  The WF Defendants argue that the filing of a Notice of Entry in that case is not a violation of the automatic stay, even where the filing of the Notice of Entry occurs post-

petition, as the challenged action was taken "in response to *Plaintiff's* Motions" to vacate the judgment of foreclosure.  *Id.* (emphasis in original).

*The WF Defendants' Arguments for Dismissal Based on the Pleading Standard of Rule 12(b)(6)*

The WF Defendants argue that when "stripped of its legal conclusions," there is "absolutely no factual content that would allow a reasonable fact-finder to conclude that the Defendants are liable for the claims alleged" by Ms. Williams.  WF Supp. Mem. at 10.  The WF Defendants further argue that the Second Amended Complaint does not identify any cause of action; does not identify the true party in interest; does not allege facts sufficient to support any claim; and does not adhere to the applicable pleading rules.  WF Supp. Affirm. at 3 (incorporating WF Supp. Mem. at 11).

Specifically, with respect to Ms. Williams' claim for damages under the FDCPA, the WF Defendants argue that this statute regulates only the activities of "debt collectors," and that the FDCPA encompasses only those entities seeking to collect on "'debts owed or due or asserted to be owed or due another.'"  WF Supp. Mem. at 11 (quoting 15 U.S.C. § 1692a(6)).  Here, the WF Defendants argue that Wells Fargo does not come within that definition, as it seeks to collect on its own debt.  WF Supp. Mem. at 11.  In addition, the judgment of foreclosure "conclusively decided the issue that Wells Fargo held the note and had standing to foreclose."  *Id.*  Therefore, they assert, Wells Fargo is a creditor with respect to the Loan, and "'[a]s a general matter, creditors are not subject to the FDCPA.'"  WF Supp. Mem. at 12 (quoting *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998).  *See Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 528-29 (S.D.N.Y. 2008) (excluding creditors from the definition of "debt collectors" under the FDCPA).

Similarly, the WF Defendants argue that Ms. Williams' claim for damages under the

FCRA fails as a matter of law.  The WF Defendants argue that this claim should be dismissed both because Ms. Williams does not provide any detail about the basis for her claim, and because her claim is procedurally deficient.  WF Supp. Mem. at 12.  In order to perfect a claim under the FCRA, the WF Defendants argue, a number of requirements under the statute must first be met. *Id.*  The plaintiff must plead that "'[she]: (1) sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information.'"  WF Supp. Mem. at 13 (quoting *Henderson v. Equable Ascent Fin., LLC.*, 2011 WL 5429631, at *3 (D.N.J. Nov. 4, 2011)).  *See Nguyen v. Ridgewood Sav. Bank (In re Nguyen),* 66 F. Supp. 3d 299, 304 (E.D.N.Y. 2014) (describing the elements of a FCRA claim against a furnisher of information).

Here, the WF Defendants argue, Ms. Williams "did not plead *any of the steps* required to perfect an FCRA claim."  WF Supp. Mem. at 13 (emphasis in original).  Specifically, they note that Ms. Williams does not identify any improper reporting of the alleged inaccurate information by a credit agency, and similarly that she does not allege that she notified a credit reporting agency of a dispute.  WF Supp. Mem. at 13.  For these reasons, the WF Defendants argue, Ms. Williams has not alleged adequately that a duty of a "furnisher of information" to investigate a dispute with respect to her credit reports arose.  *Id.*  Therefore, the WF Defendants argue, Ms. Williams has not alleged a plausible claim for a violation of the FCRA, and the Court should dismiss this claim.  *Id.*

The WF Defendants also argue that Ms. Williams has not stated a plausible claim for a violation of the automatic stay.  They argue that "[a]ny alleged violation of the automatic stay is nothing more than Wells Fargo responding to Plaintiff's quixotic attempts to overturn the

Sheriff's Sale," and that the automatic stay as set forth in Section 362(a) does not prohibit such actions.  WF Supp. Mem. at 19-20.

*The WF Defendants' Arguments for Dismissal Based on the Requirements of Rule 12(b)(1)*

The WF Defendants argue that the Second Amended Complaint should be dismissed because this Court does not have jurisdiction over Ms. Williams' claims for relief.  First, they state that Ms. Williams "appears to seek to have the Foreclosure Action and the state court's rulings and judgments declared null and void, which plainly constitutes an attack on the Judgment of Foreclosure and Sale."  WF Supp. Mem. at 15.  The WF Defendants also argue that the claims in Ms. Williams' pleadings are "indisputably and inextricably intertwined with the Foreclosure Action and 'would effectively require [this Court] to vacate' the [foreclosure judgment] issued by the [New York State Supreme Court]."  *Id.*  And they argue that under the *Rooker-Feldman* doctrine, this Court lacks the subject matter jurisdiction and authority to entertain such claims, and that dismissal of Ms. Williams' claims is therefore necessary.  *Id.*

The WF Defendants also argue that Ms. Williams' claims are barred by the *Younger* abstention doctrine, which requires federal courts to abstain from interfering with state court litigation where (i) a state court action is pending, (ii) an important state interest is implicated, and (iii) the plaintiff has an open avenue for review in state court.  WF Supp. Mem. at 15-16 (citing *Gentner v. Shulman*, 55 F.3d 87, 88-90 (2d Cir. 1995)).  They note that the doctrine has been applied in the context of foreclosure actions by courts in this district.  WF Supp. Mem. at 16 (citing *Abbatiello v. Wells Fargo Bank, N.A.*, 2015 WL 5884797, at *4 (E.D.N.Y. Oct. 8, 2015)).  And they state that Ms. Williams' Second Motion to Vacate the foreclosure judgment is still pending in state court, and involves "important state interests in contractual and property rights."  WF Supp. Mem. at 16.  Therefore, the WF Defendants argue, for these reasons as well,

13

Ms. Williams' claims for relief should be dismissed.

Finally, the WF Defendants argue that the doctrine of *res judicata* prevents the relitigation of the Foreclosure Action here, as the judgment of foreclosure was a final adjudication on the merits, the Foreclosure Action involved Ms. Williams – the party against whom the doctrine is invoked – and the claims raised in this adversary proceeding were or could have been raised in state court.  WF Supp. Mem. at 17-18.  The WF Defendants also argue that the doctrine of collateral estoppel bars Ms. Williams' claims, since her claims challenging Wells Fargo's right to foreclose and the propriety of the loan "have already been determined in the Foreclosure Action, and resulted in the Supreme Court entering a Judgment of Foreclosure and Sale."  WF Supp. Mem. at 17.

<u>The Individual Defendants' Arguments for Dismissal</u>

The Individual Defendants also seek dismissal of the Second Amended Complaint, for many of the same reasons that are advanced by the WF Defendants.  The Individual Defendants argue that dismissal of this adversary proceeding for failure to state a claim upon which relief can be granted is appropriate because Ms. Williams "fails to state any claim" against Individual Defendants Ms. Jurek and Ms. Heany "at all, as the only mention of either of these defendants is contained in the caption of the [Second] Amended Complaint."  ID Supp. Affirm. ¶ 11.

<u>Ms. Williams' Arguments in Opposition to the WF Motion to Dismiss</u>

Ms. Williams opposes the WF Motion to Dismiss on several grounds, and as noted above, she states her opposition in several documents filed with the Court.

First, Ms. Williams opposes the WF Motion to Dismiss on procedural grounds, including with respect to counsel for the WF Defendants.  *See* Second Am. Compl. ¶ 38.  She argues that Brian P. Matthews, one of the attorneys for the WF Defendants in this adversary proceeding,

failed:

- to file a notice of appearance;

- to file an affidavit of admission to the "BAR of this Court";

- to file a certificate from the Judge or other representative of the U.S. Bankruptcy Court, E.D.N.Y., that he is in good standing and is authorized to practice before this Court;

- to provide proof of a signed oath or affirmation in "this closed court matter with receipt of required fee paid";

- to provide an "oath that would 'swear' or 'affirm'" that he will support the U.S. Constitution, along with a seal and certificate of good standing from the U.S. Supreme Court; and

- to provide an affidavit or certificate pursuant to Administrative Order 431-11 that would "otherwise satisfy the inferior courts requirements" if subject matter jurisdiction existed over the material before the U.S. Bankruptcy Court).

*Id.*

Ms. Williams also argues that it is not clear that Mr. Margarella, the attorney that represented Wells Fargo in the New York state court action, is "actually an attorney within the State of New York" and in good standing, or that he is admitted to the bar of any court in New York or the U.S. Supreme Court. Second Am. Compl. ¶ 49. She requests, pursuant to Bankruptcy Rule 7026(b), that discovery take place concerning her bankruptcy case and that of another Chapter 7 debtor, Aazim D. Green, the plaintiff in a related adversary proceeding. Finally, Ms. Williams notes that, as a *pro se* litigant, the Court should not hold her to the same standards as an attorney. Second Am. Compl. ¶ 50.

Ms. Williams also advances several arguments contesting the merits of the WF Motion to Dismiss, including in the Second Amended Complaint. She states that although all payments on the Property prior to 2012 were timely, Wells Fargo "improperly accelerated" the fixed rate mortgage loan by demanding to recover the whole amount of the mortgage, rather than merely

requesting an amount necessary to cure the arrears.  Second Am. Compl. ¶¶ 41-43.  Ms.

Williams also argues that the chain of assignment of the mortgage on the Property, from

American, to Defendant MERS, and then to Defendant Wells Fargo, is not clear.  Second Am.

Compl. ¶¶ 45-48.  Ms. Williams contends that, "at the least," she is entitled to receive a "full

refund of all previous payments made to any Creditor," as the Sheriff's Sale of the Property

satisfied in the full the value of the debt.  Second Am. Compl. ¶ 44.

In the Omnibus Motion, Ms. Williams makes additional arguments in opposition to the

WF Motion to Dismiss.  First, she states that the Second Amended Complaint "does contain

factual basis for (1) return of mortgage payments, and (2) injunctive relief for violation of the

automatic stay."  Williams Omnibus Mot. ¶ 20.  Next, Ms. Williams contends that she "did have

basis for naming certain individuals as defendants in an attempt to further determine the role of

named individuals as authorized agents for the Defendant Corporation" regarding their

"knowledge of storage and/or authenticity of documents within the Defendants['] possession."

Williams Omnibus Mot. ¶ 21.  Ms. Williams disputes that her claims are barred by the *Rooker-*

*Feldman* doctrine, and asserts that the District Court has jurisdiction over her claims but also

notes that "Defendant does not deny that the claims made are directly intertwined with the

Foreclosure Action."  Williams Omnibus Mot. ¶¶ 22, 24; Williams Mot. to Strike ¶ 32 (same

quote).  Finally. Ms. Williams states that she "has not waived or withdrawn any causes of action

for violation of automatic stay, but amended the complaint to specify the cause of action and

claim for relief."  Williams Omnibus Mot. ¶ 25; Williams Mot. to Strike ¶ 33.

On March 21, 2019, Ms. Williams filed an application in support of her motion for

summary judgment.  She states that she was "directed to make a statement as to why her Motion

for Summary Judgment should not be denied by the Court."  Williams App. in Supp. ¶ 1.  Ms.

Williams says that she holds "no possessory interest in the property and understands that property has been foreclosed, and sold, however Plaintiff feels that she is rightfully entitled to monetary relief for payments made on the foreclosed property, otherwise Defendants will have been reimbursed in full $532,344.53 (+/-), in addition to monies paid by the Plaintiff."  Williams App. in Supp. ¶ 2.  Ms. Williams contends that her name and address were incorrect on documents submitted in state court.  Williams App. in Supp. ¶ 3.  She reiterates her request for "immediate reimbursement" in the amount of $294,000."  Williams App. in Supp. ¶ 4.

<u>*Ms. Williams' Arguments in Opposition to Individual Defendants' Motion to Dismiss*</u>

Ms. Williams does not separately respond to the Individual Defendants' Motion to Dismiss.  Instead, she states her opposition to that motion, in substance, in several documents filed in response to the Wells Fargo and the Individual Defendants' requests to dismiss this case. *See* Williams Omnibus Mot.; Williams Mot. to Strike; Williams App. in Supp.

Similarly, Ms. Williams does not make specific allegations as to the Individual Defendants Ms. Jurek and Ms. Heany in the Second Amended Complaint.  Rather, she identifies them in the case caption and re-states her causes of action, including "injunctive relief for violations of the automatic stay; and . . .  determination of the [state court action]," but does not identify any particular actions by either individual.  Second Am. Compl. ¶¶ 8-9.

As noted above, Ms. Williams is pro se, and the Court considers the substance of her many filings, and not their particular form or sequence, in assessing the adequacy of her claims and determining whether she states a plausible claim for relief.  In the Amended Complaint, Ms. Williams alleges that Ms. Jurek violated the automatic stay by filing an Affirmation of Opposition in response to her Motion to Vacate in state court.  Am. Compl. ¶ 4.  In their Answer,

the Individual Defendants state that the filing of that Affirmation was not a violation of the automatic stay, and demand dismissal of the Amended Complaint.  ID Answer ¶ 4.

Ms. Williams responds to that assertion in her Affirmation in Opposition to the Individual Defendants' Answer, and makes a series of arguments relating to the Foreclosure Action and the state court proceedings.  She argues that the Individual Defendants "do[] not contest the dischargeability of the [amount] outstanding on the debt, nor does the Defendant make a general denial" of the allegations raised in the pleadings.  Williams Opp. Affirm.  ¶ 57.  She disputes that her right of redemption with respect to the Property terminated under New York law when the Property was sold at the Sheriff's Sale, stating that the loan foreclosed upon "was not properly accelerated, and was never verified or validated as an accurate debt in which the Plaintiff was obliged to pay."  Williams Opp. Affirm. ¶ 61.  And she notes that she "agrees to settle for the full reimbursement of mortgaged payments made by the Plaintiff before" Wells Fargo became the creditor with respect to the Loan on the Property.  Williams Opp. Affirm. ¶ 63.

*The Defendants' Reply Arguments*

On January 4, 2019, the WF Defendants filed the first of three reply submissions in further support of the WF Motion to Dismiss.  On January 29, 2019, the WF Defendants filed a supplemental reply in further support of the WF Motion to Dismiss, following the filing of the Second Amended Complaint.  And on February 26, 2019, the WF Defendants filed a supplemental reply affirmation, again in further support of the WF Motion to Dismiss.

In their reply submissions, the WF Defendants state that the attorney for the WF Defendants, Mr. Matthews, "is admitted to practice in the state courts of New Jersey (ID: 902232012) and New York (ID: 5121371)."  WF Reply ¶ 4.  They also argue that Ms. Williams' remaining arguments are unavailing and that the adversary proceeding should be dismissed,

because the relief sought effectively calls for this Court to reverse the state court's Judgment of Foreclosure, and therefore is barred by the *Rooker-Feldman* doctrine.  WF Reply ¶¶ 5-6.  The WF Defendants contend that Ms. Williams abandons her causes of action for violations of TILA, FCRA and FDCPA, and violations of the automatic stay, because she does not address the WF Defendants' arguments in her opposition papers.  WF Reply ¶ 7.

The WF Defendants also note that the Second Amended Complaint was untimely filed under Rule 15(a)(1)(B), and should be dismissed with prejudice and without leave to replead.  WF Reply ¶¶ 8-10.  Specifically, the WF Defendants state that they filed their Motion to Dismiss on November 21, 2018 and received the Second Amended Complaint on January 2, 2019.  WF Reply ¶ 9.  They note that Rule 15 requires that an amended complaint in response to a motion to dismiss be filed no later than 21 days after service of the motion to dismiss – here, December 12, 2018.  WF Reply ¶ 8.

## The Applicable Legal Standards

### *The Pleading Requirements of Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of a claim at the pleading stage if it does not state a claim upon which relief may be granted, and Bankruptcy Rule 7012 makes this rule applicable in adversary proceedings.  As the Supreme Court has held, for a complaint to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 570 (2007).  The Court explained that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citation omitted).

It is well established in the Second Circuit that where a pro se litigant is the plaintiff,

courts should "liberally construe [such] complaints . . . to state the strongest arguments that they suggest." *Frederick v. Wells Fargo Home Mortg.*, 649 F. App'x 29, 30 (2d Cir. 2016) (citing *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006)).  Although the complaint "must plead enough facts to state a claim that is plausible . . . a complaint filed pro se is held to a less stringent pleading standard than one filed by counsel."  *Frederick,* 649 F. App'x at 30 (citing *Ahlers v. Rabinowitz,* 684 F.3d 53, 60 (2d Cir. 2012)).

When considering a motion to dismiss under Rule 12(b)(6), the court should "'accept[] all factual allegations as true, and draw [] all reasonable inferences in the plaintiff's favor.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (alteration in original) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)).  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993) (accepting as true the complaint's factual allegations and drawing inferences in the pleader's favor).  But a court is not required to accept as true those allegations that amount to no more than legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009); *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, a court may look to the facts alleged in the complaint, and also to those "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  *See Gillingham v. Geico Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (quoting *Hayden v. Cty. of Nassau,* 180 F.3d 42, 54 (2d Cir. 1999)) (stating that when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court may look to the complaint, its exhibits, and documents incorporated by reference).

*The Pleading Requirements of Federal Rule of Civil Procedure 12(b)(1)*

Courts in this circuit have stated that "[a] case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.'"  *White v. First Franklin Fin. Corp.*, 2019 WL 1492294, at *3 (E.D.N.Y. Apr. 4, 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

As one court has noted,

The plaintiff has the burden to prove that subject matter jurisdiction exists, and in evaluating whether the plaintiff has met that burden, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."

*Harriott v. Nationstar Mortg. LLC*, 2018 WL 4853045, at *5 (E.D.N.Y. Sept. 28, 2018) (alteration in original) (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010)).

As another court has observed, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions."  *Cunningham v. Bank of New York Mellon N.A.*, 2015 WL 4104839, at *1 (E.D.N.Y. July 8, 2015) (citing *Morrison*, 547 F.3d at 170).

And "dismissal is mandatory" where a court finds it does not have subject matter jurisdiction to adjudicate a dispute.  *CIT Bank, N.A. v. Jach*, 2019 WL 1383850, at *3 (E.D.N.Y. Mar. 27, 2019).  Indeed, a motion may not even be necessary where subject matter jurisdiction is lacking.  As Rule 12(h)(3) states, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

*The Rooker-Feldman Doctrine*

The *Rooker-Feldman* doctrine establishes limits on the subject matter jurisdiction of

federal courts.  It provides that "'lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment.'"  *Neshewat v. Salem (In re Salem),* 290 B.R. 479, 482 (S.D.N.Y. 2003) (quoting *Hachamovitch v. DeBuono,* 159 F.3d 687, 693 (2d Cir. 1998)).  The doctrine is derived from two Supreme Court cases, decided sixty years apart, which give effect to the principle that the federal courts have only original subject matter jurisdiction, and for this reason may not entertain direct or collateral attacks on a state court judgment.  *Singleton v. Fifth Third Bank of W. Ohio (In re Singleton),* 230 B.R. 533, 536 (B.A.P. 6th Cir. 1999) (citing *Rooker v. Fid. Trust Co.,* 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462 (1983)).

As the Supreme Court has explained, "[t]he *Rooker-Feldman* doctrine . . . is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005).  And as the Second Circuit has observed, "*Rooker-Feldman* bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment; such a claim is 'inextricably intertwined' with the state judgment."  *Hoblock v. Albany Cty. Bd. Of Elections,* 422 F.3d 77, 86-87 (2d Cir. 2005).

Notably, the *Rooker-Feldman* doctrine applies even where the state court's decision was in error, because it "'strip[s] federal subject matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions.'"  *In re Ward,* 423 B.R. 22, 27 (Bankr. E.D.N.Y. 2010) (alteration in original) (quoting *Book v. Mortg. Elec. Registration Sys.,* 608 F. Supp. 2d 277, 288 (D. Conn. 2009)).  "A motion to dismiss based on the *Rooker-Feldman* doctrine addresses subject matter jurisdiction and therefore is considered pursuant to Fed. R. Civ. P.

12(b)(1)." *White v. First Franklin Fin. Corp.*, 2019 WL 1492294, at \*3 (E.D.N.Y. Apr. 4, 2019) (footnote omitted).

Bankruptcy courts have described the steps necessary to determine whether the *Rooker-Feldman* doctrine applies as follows:

> (1) the federal-court plaintiff lost in state court; (2) the plaintiff "must complain of injuries caused by a state-court judgment"; (3) the plaintiff "must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced."

*Buckskin Realty Inc. v. Windmont Homeowners Ass'n (In re Buckskin Realty Inc.)*, 2017 WL 1130166, at \*2 (Bankr. E.D.N.Y. Mar. 24, 2017) (quoting *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009)).

### *The Younger Abstention Doctrine*

The *Younger* abstention doctrine reflects the principle that federal courts should not interfere with the progress of pending and ongoing state court proceedings.  The doctrine has its roots in criminal law and, as the Second Circuit has noted, "'[t]he core of the rule laid down in *Younger v. Harris* . . . is that a federal court, in the absence of unusual circumstances, cannot interfere with a pending state criminal prosecution.'"  *Gentner v. Shulman*, 55 F.3d at 89 (quoting 17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4252, at 193-95 (2d ed. 1988)).

Since then, the *Younger* doctrine has been extended to civil proceedings, and in 2013, the Supreme Court further refined the purview of the doctrine to "state criminal prosecutions", "civil enforcement proceedings", and "civil proceedings that 'implicate a State's interest in enforcing the orders and judgments of its courts.'"  *Walker v. Flagstar Bancorp, Inc.*, 2018 WL 1796543, at \*2-3 (E.D.N.Y. Apr. 16, 2018), *appeal dismissed,* Case No. 18-1191 (2d Cir. July 16, 2018) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013)).  "If *Younger* applies,

'abstention is mandatory.'" *333 E. 60th St., Inc. v. N.Y. State Liquor Auth.*, 2008 WL 4104012, at *3 (S.D.N.Y. Aug. 29, 2008) (quoting *Schlagler v. Phillips*, 166 F.3d 439, 441 (2d Cir. 1999)).

*Younger* abstention may be appropriate "'where federal review would disrupt state proceedings that: (1) are pending; (2) implicate important state interests; and (3) provide the plaintiffs an adequate opportunity to litigate federal claims.'" *Walker*, 2018 WL 1796543, at *2-3 (footnote omitted) (quoting *Fraser v. Aames Funding Corp.*, 2017 WL 564727, at *3 (E.D.N.Y. Jan. 24, 2017)). With respect to the first element, the word "pending" has been interpreted by courts in this Circuit to encompass only those matters where "'the proceedings [were] . . . initiated before any proceedings of substance on the merits have taken place in the federal court.'" *Tolliver v. Skinner*, 2013 WL 658079, at *13 (S.D.N.Y. Feb. 11, 2013) (quoting *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 2009)).

Unlike abstention under the *Rooker-Feldman* doctrine, "*Younger* abstention is not jurisdictional; rather it is a defense that can be waived." *Tolliver*, 2013 WL 658079, at *13 (citing *McCune v. Frank*, 521 F.2d 1152, 1157 n.15 (2d Cir. 1975)). Accordingly, a party asserting the doctrine as a defense bears the burden of establishing that it applies. *See Tolliver*, 2013 WL 658079, at *15 (finding that the defendants "failed to meet their burden of establishing the elements of the *Younger* abstention defense").

Parties have successfully invoked the *Younger* abstention doctrine in this District "where '[p]laintiffs seek injunctive relief relating to the same property that is the subject matter of [an] underlying state court action.'" *Walker*, 2018 WL 1796543, at *2-3 (alteration in original) (quoting *Abbatiello,* 2015 WL 5884797, at *4). *See Wenegieme v. US Bank Nat'l Assoc.*, 2016 WL 3348539, at *2 (E.D.N.Y. June 9, 2016) (finding *Younger* abstention doctrine applicable

where plaintiff sought injunctive relief relating to the same property that was the subject of an underlying state court action).

### *The Res Judicata Doctrine*

The doctrine of res judicata, or claim preclusion, determines the preclusive effect of a state court judgment in a subsequent federal lawsuit. As the Supreme Court has observed, the doctrine is governed by the full faith and credit clause, which requires "all federal courts to give preclusive effect to state-court judgments whenever the courts of [that] State . . . would do so." *Allen v. McCurry,* 449 U.S. 90, 96 (1980). *See* 28 U.S.C. § 1738 (judicial proceedings in any State "shall have the same full faith and credit in every court within the United States…as they have by law or usage in the courts of such State . . . .").

Section 1738 directs that federal courts look to the preclusion law of the state in which judgment was rendered. As the Supreme Court has explained, "[i]t has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it . . . commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (quoting *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 481-82 (1982)).

Under New York law, the following elements must be established in order *for res judicata* to apply: "(1) there must be a final judgment in the first action; (2) that was rendered 'on the merits'; (3) between the same parties in both actions; and (4) concerning the same claims in both actions." *CIT Bank, N.A.*, 2019 WL 1383850, at *5 (quoting *In re Hunter*, 4 N.Y.3d 260, 269 (2005). The party "seeking to invoke *res judicata* to prove that the doctrine bars the second action" bears the burden of proof on each of these elements. *Brown Media Corp. v. K&L Gates,*

*LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (quoting *Comput. Assocs. Int'l, Inc. v. Atlai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997)).

One of the principal objectives of the doctrine of *res judicata* is to bring finality and closure to matters that have been fully addressed between the parties in another proceeding.  As the Second Circuit has noted, "[t]he doctrine of res judicata is based on the principle not only that the same parties in the same capacities should not be required to litigate anew a matter which might have been determined and settled in the former litigation, but that litigation should be determined with reasonable expedition . . . ." *Lasker v. UBS Sec. LLC*, 2009 WL 57137, at *4 (E.D.N.Y. Jan. 7, 2009) (quoting *McKinney v. Widner*, 746 S.W.2d 699, 705 (Tenn. Ct. App. 1987)), *aff'd*, 358 F. App'x 225 (2d Cir. 2009).

### *The Collateral Estoppel Doctrine*

The doctrine of collateral estoppel, or issue preclusion, addresses whether a party in a subsequent proceeding should be prevented from contesting an issue that was decided in an earlier proceeding.  "The doctrine of issue preclusion 'is a narrower species of *res judicata,* [which] precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party . . . .'" *Fequiere v. Tribeca Lending,* 2016 WL 1057000, at *8 (E.D.N.Y. 2016) (quoting *Tsirelman v. Daines,* 19 F. Supp. 3d 438, 449 (E.D.N.Y. 2014) (quoting *Ryan v. N.Y. Tel. Co.,* 62 N.Y.2d 494, 500 (1984))).

As with res judicata, federal courts look to state law in determining whether to give preclusive effect to a determination made in a state court.  That is, "'[a] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Mejia v. N.Y.C. Health & Hosps. Corp.*, 2014 WL 2115109, at *2 (S.D.N.Y. May 19, 2014) (quoting *Migra v. Warren City Sch. Dist. Bd.*

*of Educ.*, 465 U.S. 75, 81 (1984)), *aff'd*, 622 F. App'x 70 (2d Cir. 2015).

Several requirements must be met in order for a prior New York state court judgment to

have preclusive effect.  As the Second Circuit has observed:

> Under New York law, collateral estoppel bars relitigation of an issue when (1) the
> identical issue necessarily was decided in the prior action and is decisive of the
> present action, and (2) the party to be precluded from relitigating the issue had a
> full and fair opportunity to litigate the issue in the prior action.

*In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449,

455-56 (1985)).  That is, as then-Judge Sotomayor of the Second Circuit noted, "'[u]nder New

York law, collateral estoppel prevents a party from relitigating an issue decided against that party

in a prior adjudication.'"  *Farrell v. Burke*, 449 F.3d 470, 482-83 (2d Cir. 2006) (quoting *Curry*

*v. City of Syracuse*, 316 F.3d 324, 331 n.4 (2d Cir. 2003)).

*The Elements of an Automatic Stay Violation Claim*

Bankruptcy Code Section 362(a) provides that "a [bankruptcy] petition filed under

section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of . . . any act

to obtain possession of property of the estate or of property from the estate or to exercise control

over property of the estate."  11 U.S.C. § 362(a)(3).  This stay comes into effect without any

order from the bankruptcy court, and it is one of the most basic protections for debtors – and

creditors – in the bankruptcy process.

In light of its "fundamental importance to a debtor's bankruptcy case, the automatic stay

'is broadly written and broadly construed.'"  *In re Grinspan*, 597 B.R. 725, 733 (Bankr.

E.D.N.Y. 2019) (quoting *In re NextWave Pers. Commc'ns, Inc.*, 244 B.R. 253, 271 (Bankr.

S.D.N.Y. 2000)).  As one court observed, "nothing is more basic to bankruptcy law than the

automatic stay and nothing is more important to fair case administration than enforcing stay

violations." *In re Lehman Bros. Holdings*, 433 B.R. 101, 112 (Bankr. S.D.N.Y. 2010), *aff'd*, 445 B.R. 130 (S.D.N.Y. 2011).

For all of these reasons, a violation of the automatic stay is a serious matter, and if established, may lead to serious consequences.  Bankruptcy Code Section 362(k) provides that "an individual injured by any willful violation of the stay . . . shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k)(1).

Courts also recognize that the term "'willful' in the context of § 362(k) means 'any deliberate act taken [by a creditor] in violation of the [automatic stay], which the violator knows to be in existence.'" *In re Leiba*, 529 B.R. 501, 507 (Bankr. E.D.N.Y. 2015) (quoting *Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1105 (2d Cir. 1990)).  That is, a "'specific intent to violate the stay is not required; instead, general intent in taking actions which have the effect of violating the automatic stay is sufficient to warrant damages.'"  *In re Grinspan*, 597 B.R. at 744 (quoting *In re Jean-Francois*, 532 B.R. 449, 454 (Bankr. E.D.N.Y. 2015)).

Courts in this Circuit recognize that a stay violation claim seeking an award of damages requires the plaintiff to plead, and eventually to prove, the following elements:  "(1) that a bankruptcy petition was filed, (2) that the debtor is an individual, (3) that the creditor received notice of the petition, (4) that the creditor's actions were in willful violation of the stay, and (5) that the debtor suffered damages."  *In re Leiba*, 529 B.R. at 506 (footnote omitted).  *See Garland v. Lawton (In re Garland)*, 2001 WL 34798966 (Bankr. D. Vt. Aug. 31, 2001) (same); *In re Laskaratos,* 605 B.R. 282, 299 (Bankr. E.D.N.Y. 2019) (same, quoting *Leiba*, 529 B.R. at 506).

As this Court has observed, "[c]ompensatory damages should be considered in light of what is necessary to repair the injury and reimburse the costs caused by the stay violation." *In re Laskaratos,* 605 B.R. at 300.  If injunctive relief is the plaintiff's objective, then damages do not need to be alleged, but grounds for the entry of an injunction, such as the prospect of a future violation, must be alleged, and eventually, established.

*The Elements of a FDCPA Claim*

The FDCPA regulates the conduct of third-party debt collectors who attempt to collect debts on behalf of others.  Its purposes include "to eliminate abusive debt collection practices by debt collectors."  15 U.S.C. § 1692a(e).  In order to state a claim under the FDCPA, a plaintiff must allege that "(1) [the plaintiff is] a 'consumer' who allegedly owes the debt or a person  who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant engaged in any act or omission in violation of FDCPA requirements."  *Cohen v. Ditech Fin., LLC,* 342 F. Supp. 3d 460, 465 (S.D.N.Y. 2018) (internal quotations omitted).  *See In re Jacques,* 416 B.R. 63, 74-75 (Bankr. E.D.N.Y. 2009) (same).

Under the FDCPA, a consumer "debt" is "any obligation . . . of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).

The FDCPA defines a "debt collector" as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another."  15 U.S.C. § 1692a(6).  It also excepts from this definition "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent

such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F)(iii).

That is, as courts have found, the FDCPA does not apply to lenders, and similarly does not apply to mortgage servicing companies unless "the mortgage at issue was already in default at the time when servicing began."  *Dawson v. Dovenmuehle Mort., Inc.,* 2002 WL 501499, at *5 (E.D. Pa. Apr. 3, 2002).  For example, the Second Circuit held that a plaintiff did not state a claim for relief under the FDCPA when the plaintiff "[did] not allege that his home loan was already in default at the time [the servicer] became the servicer of his mortgage and therefore does not allege that [the servicer] is a 'debt collector' under the FDCPA."  *Macias v. Ocwen Loan Servicing, LLC*, 718 F. App'x 32, 35 (2d Cir. 2017) (citing 15 U.S.C. §§ 1692e, 1692f, 1692g).

*The Elements of a FCRA Claim*

The FCRA protects the fairness, accuracy, and privacy of information contained in consumer credit reports.  "'The FCRA creates a private right of action . . . [arising from] the negligent or willful violation of any duty imposed under the statute.'"  *Mund v. Transunion*, 2019 WL 955033, at *2 (E.D.N.Y. Feb. 27, 2019) (quoting *Casella v. Equifax Credit Info. Servs*., 56 F.3d 469, 473 (2d Cir. 1995)).

As one court has explained, "'[w]hen a consumer disputes information contained in his or her credit report to a credit reporting agency, the FCRA requires that credit reporting agency notify the entity that furnished the disputed information of the consumer's dispute,'" and receipt of that notice triggers a "'duty on furnishers of information to investigate disputed information.'"  *Mund*, 2019 WL 955033, at *2 (quoting *Jenkins v. AmeriCredit Fin. Servs., Inc.*, 2017 WL 1325369, at *4, *6 (E.D.N.Y. Feb. 14, 2017)).  *See* 15 U.S.C. § 1681s-2(b).

Accordingly, in order to state a FCRA claim, a plaintiff must allege adequately (i) that he or she disputed information in his or her credit report to a credit reporting agency; (ii) that the credit reporting agency notified the entity that furnished the reporting agency with the disputed information; and (iii) that the furnisher "thereafter acted in 'willful or negligent noncompliance . . .'" by failing to conduct a reasonable investigation of the dispute. *Mund*, 2019 WL 955033, at *2 (quoting *Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 343 (E.D.N.Y. 2012)).

In the Second Circuit, the duty to investigate requires a "reasonable investigation" by the furnisher of information. *Mund*, 2019 WL 955033, at *2. "Reasonable investigation" has been interpreted to mean that the furnisher has "review[ed] information provided by the consumer reporting agency, investigat[ed], and report[ed] any inaccuracies to all consumer reporting agencies to which the furnishers provide information." *Mund*, 2019 WL 955033, at *2 (quoting *Jenkins*, 2017 WL 1325369, at *6). Where the furnisher of information received notice but failed to make a "reasonable investigation" into the credit dispute as required by the FCRA, a plaintiff may rec over damages for violations of the statute. *See Mund*, 2019 WL 955033, at *2 (quoting *Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 234 (S.D.N.Y. 2014)) (explaining that a plaintiff's damages depend on the type of violation of the statute).

## *The Elements of a TILA Claim*

TILA was enacted to ensure that creditors "provide borrowers clear, conspicuous, and accurate disclosures of the loan terms and other material information." *Dabydeen v. Wells Fargo Bank, N.A.*, 2018 WL 3212421, at *4 (E.D.N.Y. June 29, 2018) (quoting *Midouin v. Downey Sav. & Loan Ass'n, F.A.*, 834 F. Supp. 2d 95, 102 (E.D.N.Y. 2011). *See* 15 U.S.C. § 1632.

TILA is a remedial statute, and it addresses the circumstances and communications at the time a loan is made.  In order adequately to allege a TILA violation, therefore, a plaintiff must allege that a creditor failed to provide clear, conspicuous, and accurate disclosures of the loan's terms.  Under TILA, as a general matter, "any action . . . may be brought . . . in any . . . court of competent jurisdiction, within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  In certain specified situations, not applicable here, a TILA claim may be brought "before the end of the 3-year period beginning on the date of the violation."  *Id*.  That is, in all circumstances, a one- to three-year statute of limitations period applies to a claim under this statute.

Courts in this Circuit have declined to find that a claim under TILA existed where the plaintiff alleged facts "go[ing] to the validity of various documents relevant to the state court foreclosure action, not disclosures in lending."  *Dabydeen*, 2018 WL 3212421, at *4.

### Discussion

In her Second Amended Complaint, Ms. Williams asserts a claim for relief against the Defendants to recover the mortgage payments and payments towards maintenance and improvements on the Property.  Second Am. Compl. ¶¶ 7, 10.  In her original and First Amended Complaints, Ms. Williams also asserts claims against the Defendants under three federal remedial statutes that address different aspects of the relationship between borrowers, lenders, and others involved in consumer debt and credit reporting – the FDCPA, the FCRA, and the TILA.  And in the First and Second Amended Complaints, she also asserts claims for violations of the automatic stay under Bankruptcy Code Section 362(a) and (k).  And in the Second Amended Complaint, she questions and seeks to revisit the state court's determinations in the Foreclosure Action, specifically with respect to the standing of the Defendants to foreclose on

the Property.

The Court first considers whether the Defendants have shown that Ms. Williams does not state a plausible for claim for relief on each of these counts.  The Court next considers whether the Defendants have shown that this Court lacks subject matter jurisdiction to consider each claim under the *Rooker-Feldman* doctrine, and whether abstention is appropriate under the *Younger* abstention doctrine.

### *Whether Ms. Williams States a Plausible Claim for Damages and Recovery of Mortgage and Property Maintenance Payments*

Ms. Williams seeks damages and recovery of the amounts that she paid for her mortgage from June 2008 through November 2017, and for maintenance and improvements to the Property, which was subsequently foreclosed upon by Wells Fargo and sold to Defendant AA Properties in a Sheriff's Sale following the Judgment of Foreclosure in Wells Fargo's favor.

The Defendants do not dispute that Ms. Williams made mortgage payments pertaining to the Property, that she funded maintenance of or improvements to the Property, or that a Foreclosure Action was commenced and a Sheriff's Sale was held.  Rather, they dispute that these circumstances state a plausible claim for relief, or entitle Ms. Williams to the relief she seeks.  The WF Defendants additionally argue that Ms. Williams, through this "cause of action," in substance seeks to relitigate the Judgment of Foreclosure issued in state court.

It is clear from the record of these proceedings that Ms. Williams advances this claim in subjective good faith.  In effect, she argues that since she no longer has the property, she should receive a "refund" of the payments that she made with respect to the property, including mortgage payments and the costs of home improvements.  But Ms. Williams does not provide, and this Court has not found, a statutory or other legal basis for the Court to provide a "refund" of mortgage payments made on the Property, and it does not appear that any legal basis exists.

While it is true that the amount that a borrower may pay to a lender over the life of a loan may vastly exceed the amount that is borrowed, this is a consequence of the terms of the loan, and not a basis for any form of relief.  And while it is also true that a borrower is entitled to any surplus that a lender may realize upon a foreclosure sale, here that does not appear to have occurred.

For these reasons, and based on the entire record, the Court finds that Ms. Williams has not stated a plausible claim to recover the amounts that she paid in connection with the mortgage on the Property and to maintain or improve the Property.  Accordingly, the Motions to Dismiss this claim are granted.

### *Whether Ms. Williams States a Plausible Claim for Violations of the Automatic Stay*

Ms. Williams asserts a claim for "injunctive relief for violations of the automatic stay" based upon violations of the automatic stay that went into effect upon the commencement of her bankruptcy case.  Second Am. Compl. ¶ 8.  More generally, she also may seek an award of damages, as she states that she is "filing this amended complaint for violation of the Automatic Stay order seeking recovery of money/property."  Am. Compl. at 1.

In the Amended Complaint, Ms. Williams alleges that Defendant Wells Fargo, by its attorneys, Defendants Mr. Margarella of Reed Smith and Ms. Jurek of Gross Polowy, LLC, violated the automatic stay on two occasions.  First, she claims that a stay violation occurred when, on June 7, 2018, more than two months after the March 26, 2018 petition date, they filed the Notice of Entry in the Foreclosure Action of the Decision and Order dated April 16, 2018 denying Ms. Williams' First Motion to Vacate the Sheriff's Sale.  *See* Am. Compl. ¶ 4 at 2 and Exh. B.  In particular, Ms. Williams alleges that "Defendants Wells Fargo Bank, N.A. through its attorney Michael V. Margarella of Reed Smith LLP through Notice of Entry on a true and

correct copy of an Order of Judge Salvatore J. Modica dated June 07, 2018 . . . has violated the automatic stay". Am. Compl. ¶ 4 at 2.

And second, Ms. Williams contends that the automatic stay was violated on September 13, 2018, when Defendant Wells Fargo, by its attorneys, filed opposition in response to Ms. Williams' Second Motion to Vacate the Sheriff's Sale. *See* Am. Compl. ¶ 4 and Exh. C. She alleges that "Amber A. Jurek of Gross Polowy, LLC, attorney for Wells Fargo Bank, N.A., has violated the automatic stay and have willfully filed Affirmation In Opposition in the Supreme Court in and for the County of Queens on dates September 13, 2018 in case no. 7127/2013." Am. Compl. ¶ 4 at 2.

Ms. Williams must allege four threshold elements to state a plausible stay violation claim: first, that a bankruptcy petition was filed; second, that she is an individual; third, that the defendant received notice of the petition; and fourth, that the creditor's actions were in willful violation of the stay. *See In re Leiba*, 529 B.R. at 506 (listing four elements to state a plausible claim for a stay violation). In addition, to state a claim to recover damages, she must also allege that she suffered damages as a result of the stay violation. *See In re Leiba*, 529 B.R. at 507 (awarding damages in the form of attorney's fees). And to state a claim for an injunction, she must allege, in substance, that the equitable remedy of an injunction is warranted under the circumstances.

Whether Ms. Williams alleges that a bankruptcy petition was filed at the time the Notice of Entry and the Opposition to the Second Motion to Vacate were filed. The first element that Ms. Williams must allege to state a claim for a violation of the automatic stay is that her bankruptcy petition was filed at the time of the alleged violations.

Here, Ms. Williams alleges that she filed her Chapter 7 bankruptcy petition on March 26, 2018, and the automatic stay came into effect on that date.  Am. Compl. ¶ 9 at 2.  The record of Ms. Williams' bankruptcy case shows that stay relief was not ordered by the Court, and that Ms. Williams' discharge was entered on January 4, 2019.  On that date, the protection of the automatic stay ended.  *See* 11 U.S.C. § 362(c).

In addition, Ms. Williams alleges that on June 7, 2018, more than two months after the March 26, 2018 petition date, Wells Fargo, by its attorneys, filed the Notice of Entry in the Foreclosure Action of the Decision and Order dated April 16, 2018 denying Ms. Williams' First Motion to Vacate the Sheriff's Sale.  *See* Am. Compl. ¶ 4 at 2 and Exh. B.  And she alleges that on September 13, 2018, Wells Fargo, by its attorneys, filed opposition in response to Ms. Williams' Second Motion to Vacate the Sheriff's Sale.  *See* Am. Compl. ¶ 4 at 2 and Exh. C.

That is, Ms. Williams has alleged, and the record of her bankruptcy case shows, that her bankruptcy petition was filed at the time the Notice of Entry and the Opposition to the Second Motion to Vacate were filed.  Therefore, Ms. Williams has adequately alleged the first element of her stay violation claim, that her bankruptcy petition was filed at the time the Notice of Entry and the Opposition to the Second Motion to Vacate were filed.

Whether Ms. Williams alleges that she is an individual.  The second element that Ms. Williams must allege to state a stay violation claim is that she – as the debtor – is an individual.

Here, there can be no doubt that Ms. Williams adequately alleges, and the record of her bankruptcy case shows, that she is an individual.  *See, e.g.,* Case 18-44707, Voluntary Petition for Individuals Filing for Bankruptcy, Case No. 18-44707, ECF No. 6.  Therefore, Ms. Williams has adequately alleged the second element of her stay violation claim, that she is an individual.

Whether Ms. Williams alleges that the Defendants received notice of her bankruptcy

petition. The third element that Ms. Williams must allege to state a stay violation claim is that the Defendants Wells Fargo, Mr. Margarella, and Ms. Jurek, received notice of her bankruptcy petition.

Here, the record shows that Wells Fargo is identified as a creditor in Ms. Williams' initial joint bankruptcy petition, and that a Notice of Bankruptcy was entered in the case. *See* Am. Compl., Exh. A. *See also* Case No. 18-41652, ECF No. 7 (Notice of Bankruptcy). Wells Fargo is also identified as a creditor in her individual bankruptcy petition. *See* Case No. 18-44707, ECF No. 4 ("Notice of Bankruptcy"). She also alleges that Wells Fargo has not replied or objected to the Notice of Bankruptcy. Am. Compl. ¶ 5 at 2.

That is, Ms. Williams has alleged in substance, and the record of her bankruptcy case shows, that Wells Fargo, as a creditor identified in her bankruptcy case, received notice that her bankruptcy petition was filed at the time the Notice of Entry and the Opposition to the Second Motion to Vacate were filed. Therefore, as to Wells Fargo, Ms. Williams has adequately alleged the third element of her stay violation claim, that it had received notice that her bankruptcy petition was filed at the time the Notice of Entry and the Opposition to the Second Motion to Vacate were filed. But as to Mr. Margarella and Ms. Jurek, Ms. Williams has not adequately alleged this element, nor does it appear from the record that at the time of these activities, they were counsel of record to Wells Fargo in this bankruptcy case.

Whether Ms. Williams alleges that the conduct at issue was in willful violation of the automatic stay. The third element that Ms. Williams must allege to state a stay violation claim is that the conduct at issue amounts to a willful violation of the automatic stay. The automatic stay prevents "any act to . . . continu[e], including the issuance or employment of process . . . a judicial . . . action or proceeding against the debtor that was . . . commenced before the

commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(1).

Ms. Williams alleges, in substance, that by filing the Notice of Entry and filing opposition to her Second Motion to Vacate the foreclosure judgment in the Foreclosure Action, the Defendants "continu[ed], [by] the issuance or employment of process . . . a judicial . . . proceeding against the debtor." Am. Compl. ¶ 4. She also alleges, in substance, that these actions were "willful," in the sense that they were taken deliberately. *See In re Leiba,* 529 B.R. at 501 (observing that "willful" includes "'any deliberate act taken [by a creditor] in violation of the [automatic] stay'" (quoting *In re Crysen/Montenay Energy Co.*, 902 F.2d at 1105 )).

The WF Defendants argue that the automatic stay in Ms. Williams' bankruptcy case should not prevent them from "responding to [her] quixotic attempts to overturn the Sheriff's Sale" that occurred in the Foreclosure Action. WF Supp. Mem. at 19-20.

Wells Fargo is correct that its actions – filing the Notice of Entry and filing opposition to Ms. Williams' Second Motion to Vacate the foreclosure judgment – were, at least to some extent, taken in response to steps taken by Ms. Williams in the Foreclosure Action. But the Foreclosure Action itself was commenced by Wells Fargo, and was "a judicial . . . action or proceeding against the debtor that was . . . commenced before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(1). Wells Fargo could have, but did not, seek relief from the automatic stay before proceeding. As a consequence, whether these steps were taken, in whole or in part, in response to Ms. Williams' filings in the Foreclosure Action, does not answer the question of whether they were nevertheless in violation of the automatic stay in Ms. Williams' bankruptcy case.

As the Second Circuit has observed, "[w]hether an action or proceeding is 'against' the debtor is determined by the posture of the parties at the commencement of the action or

38

proceeding . . . ." *Koolik v. Markowitz,* 40 F.3d 567, 568 (2d Cir. 1994). To the same effect, the Second Circuit has concluded that "the debtor's status must be determined in accordance with its status at the time of the original proceeding. The determination should not shift depending on which party is ahead at a particular state in the litigation." *Teachers Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 64-65 (2d Cir. 1986) (citation omitted).

And as one bankruptcy court has found, "after the Debtors filed their chapter 11 cases, the automatic stay applied even to action initiated by the Debtors, . . . in any case in which the Debtors were defendants at the time the case was initially filed." *In re Residential Capital, LLC,* 2012 WL 3860586, at *8 (Bankr. S.D.N.Y. Aug. 8, 2012). Similarly, as another bankruptcy court concluded, a creditor's post-petition filing of an application for the entry of judgment in a state court foreclosure action against the debtor was a violation of the stay. *In re Robinson,* 228 B.R. 75, 81 (Bankr. E.D.N.Y. 1998). There, the court observed that "[the creditor] deliberately requested and obtained entry of the Judgment in violation of the automatic stay." *Id.*

In the context of her stay relief claim, Ms. Williams alleges that Wells Fargo took steps, by filing the Notice of Entry and opposition to her Second Motion to Vacate the Foreclosure Judgment, that "continued . . . a judicial . . . action or proceeding against the debtor that was . . . commenced before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(1). As the Second Circuit and other courts have found in similar contexts, where the debtor is the defendant in a pre-bankruptcy action or counterclaim, taking these steps without first seeking relief from the automatic stay in the bankruptcy court puts the plaintiff in that other action at risk of a stay violation.

That is, Ms. Williams has alleged, and the record of her bankruptcy case shows, that in filing the Notice of Entry and Opposition to the Second Motion to Vacate in the Foreclosure

Action, Wells Fargo and its attorneys Mr. Margarella and Ms. Jurek took steps to "continue[] . . .

a judicial . . . action or proceeding against the debtor that was . . . commenced before the

commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(1). Therefore, Ms. Williams has

adequately alleged the fourth element of her stay violation claim, that Wells Fargo, Mr.

Margarella, and Ms. Jurek took actions that were in willful violation of the automatic stay.

<u>Whether Ms. Williams has alleged that she suffered damages as a result of the stay</u>

<u>violation, or that the equitable remedy of an injunction is warranted.</u> The last element that Ms.

Williams must allege in order to state a plausible stay violation claim is that she is entitled to

some form of relief – either an award of damages, or an injunction. As this Court has noted, it is

not clear from Ms. Williams' pleadings whether she seeks the remedy of damages, as suggested

by the Amended Complaint, or an injunction, as stated in the Second Amended Complaint. The

Court addresses these alternative remedies in turn.

As to the remedy of damages, compensatory damages "should be considered in light of

what is necessary to repair the injury and reimburse the costs caused by the stay violation." *In re*

*Laskaratos,* 605 B.R. at 300. But here, a review of Ms. Williams' pleadings leads to the

conclusion that she has not identified a compensable "injury" that she suffered, or reimbursable

"costs" that she incurred, as a result of the alleged violations of the automatic stay. Even when

viewed in the light most favorable to her claims, and "liberally [construing her] . . . complaints . .

. to state the strongest arguments they suggest," it is plain that she does not state a plausible

claim to recover damages as a consequence of the alleged violations of the automatic stay.

*Frederick*, 649 F. App'x at 30.

As to the remedy of an injunction against future stay violations, a plausible claim for

injunctive relief requires, at a minimum, grounds to conclude that this exercise of the court's

equitable powers is warranted.  And here, a review of Ms. Williams' pleadings, as well as the record in her bankruptcy case, points to the conclusion that an injunction against future violations of the automatic stay is not warranted, for the simple reason that the automatic stay is no longer in effect, and has not been in effect since Ms. Williams received a discharge in her bankruptcy case, on January 4, 2019.  On that date, the protection of the automatic stay ended. *See* 11 U.S.C. § 362(c).

Therefore, Ms. Williams has not adequately alleged the fifth element of her stay violation claim, that she suffered damages as a result of the stay violation, or that the equitable remedy of an injunction is warranted.

*      *      *

For these reasons, and based on the entire record, the Court finds that Ms. Williams has not stated a plausible claim for violations of the automatic stay.  Accordingly, the Motions to Dismiss this claim are granted.

### *Whether Ms. Williams States a Plausible Claim for Redetermination of the Foreclosure Action*

Ms. Williams asserts a claim for relief against the Defendants seeking "the determination of the [Foreclosure Action]."  Second Am. Compl. ¶ 9.  She alleges, in substance, that Defendant Wells Fargo lacked standing to foreclose on the Property in the Foreclosure Action in state court. Second Am. Compl.  ¶¶ 22-23, 29-30.  And she acknowledges that at this time, she "has no possessory interest in the property and understands that property has been foreclosed, and sold, however Plaintiff feels that she is rightfully entitled to monetary relief for payments made on the foreclosed property, otherwise Defendants will have been reimbursed in full . . . in addition to monies paid by the Plaintiff."  Williams App. in Supp. ¶ 2.

Here again, as with her claim for damages and recovery of mortgage and property maintenance payments, there is no reason to doubt that Ms. Williams advances this claim in

subjective good faith.  But here as well, Ms. Williams does not provide, and this Court has not found, a statutory or other legal basis for the Court to revisit the determinations made in the Foreclosure Action, including with respect to the question of whether Wells Fargo had standing to foreclose on the Property, and it does not appear that any legal basis exists.

In addition, to the extent that this Court went down the path of undertaking this review, and redetermining the matters that were decided by the state court in the Foreclosure Action, it would contravene the limitations on federal court subject matter jurisdiction as set forth in the *Rooker Feldman* doctrine.

For these reasons, and based on the entire record, the Court finds that Ms. Williams has not stated a plausible claim for redetermination of the Foreclosure Action.  Accordingly, the Motions to Dismiss this claim are granted.

### *Whether Ms. Williams States a Plausible Claim Under the FDCPA*

In order to state a claim under the FDCPA, Ms. Williams must allege that she is a consumer "who allegedly owes the debt or . . .  who has been the object of efforts to collect a consumer debt," that "the defendant collecting the debt is considered a 'debt-collector,'" and that the defendant "engaged in any act or omission in violation of . . . ." the FDCPA.  *Cohen*, 342 F. Supp. 3d at 465.  *See In re Jacques*, 416 B.R. at 74-75 (describing the elements required to state a claim under the FDCPA).

Whether Ms. Williams Alleges that the Loan Constitutes Consumer Debt.  The first element that Ms. Williams must allege to state a FDCPA claim is that the loan at issue constitutes consumer debt.  The FDCPA defines consumer debt as "any obligation . . . of a consumer to pay money arising out of a transaction in which the money, property, insurance, or

services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).

Here, Ms. Williams alleges that she used the proceeds of the Loan to purchase the Property in June 2008.  Second Am. Compl. ¶ 18.  She also alleges that she "domiciles . . . as occupant of the Property" – that is, that it was her primary residence.  Second Am. Compl. ¶ 2.  As a consequence, she has, in substance, alleged that the Property was used "primarily for a personal, family, or household purposes."  15 U.S.C. § 1692a(5).

Therefore, Ms. Williams has adequately alleged the first element of her FDCPA claim, that the Loan constitutes consumer debt.

<u>Whether Ms. Williams Alleges that Wells Fargo Is a Debt Collector.</u>  The second element that Ms. Williams must allege to state a FDCPA claim is that Wells Fargo is a "debt collector." The FDCPA regulates only the activities of "debt collectors," and this is a defined term under the statute.  In particular, FDCPA Section 1692a(6)(F)(iii) excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692.  That is, the FDCPA does not regulate the activities of *lenders* who seek to collect a debt.  Nor does the FDCPA regulate the activities of debt collectors who attempt to collect a debt that was *not already in default* when the creditor acquired it.  *See* 11 U.S.C. 1692a(6)(F)(iii).

Here, Ms. Williams alleges that Wells Fargo became the creditor on the Loan before she missed two payments in 2012, and that soon thereafter, Wells Fargo commenced the Foreclosure Action.  She states, "[t]he fixed rate of the original agreement increased from the original fixed rate and in 2012, after Plaintiff, failed to make two timely payments, Wells Fargo Bank, N.A.

initiated foreclosure of [the] mortgage." Second Am. Compl. ¶ 17. That is, Ms. Williams does not allege that Wells Fargo became the creditor on the Loan after it was in default.

And Ms. Williams similarly does not allege that Wells Fargo is collecting on a debt owed to another entity. Rather, she states that Wells Fargo was the "creditor" with respect to the Loan at the time it commenced the Foreclosure Action. She alleges that she made $194,334.00 in mortgage payments to Wells Fargo, that she subsequently defaulted on the mortgage after the rate on the mortgage increased, and that Wells Fargo thereafter initiated foreclosure proceedings in 2012. Second Am. Compl. ¶¶ 17, 20. In considering similar allegations, the Second Circuit concluded that the plaintiff did not state a claim for relief under the FDCPA when he "[did] not allege that his home loan was already in default at the time [the foreclosing entity] became the servicer of his mortgage and therefore does not allege that [it] is a 'debt collector' under the FDCPA." *Macias*, 718 F. App'x at 35 (citing 15 U.S.C. §§ 1692e, 1692f, 1692g). The same conclusion applies here.

Therefore, Ms. Williams has not adequately alleged the second element of her FDCPA claim, that Wells Fargo is a "debt collector" for purposes of the FDCPA.

<u>Whether Ms. Williams Alleges that Wells Fargo Engaged in Conduct Prohibited by the FDCPA.</u> The third element that Ms. Williams must allege to state a FDCPA claim is that Wells Fargo engaged in conduct that is prohibited by that statute.

Here, Ms. Williams alleges that Defendant Wells Fargo and other entities violated the "FDCPA . . . by omitting portions of the Order executed by Judge Flug relating to the accuracy of the files of the Defendant Wells Fargo" and that they have "engaged in constructive fraud that deprives the Plaintiff of Rights pertaining to property." Am. Compl. ¶ 4 at 3.

Ms. Williams' allegations show that she objects to how Wells Fargo proceeded in state court and believes that Wells Fargo engaged in conduct that amounts to a "constructive fraud." But these allegations do not indicate how this conduct would amount to a violation of the FDCPA. Nor does she specify any particular provision of the FDCPA that was violated. And the state court's Order denying Wells Fargo's motion for a judgment of foreclosure is a matter of public record. That is, Ms. Williams' allegations in the Amended Complaint, including the allegation that Defendant Wells Fargo "omit[ted] portions of the Order executed by Judge Flug relating to the accuracy of the files," does not identify conduct that violated the FDCPA, or provide a basis for relief.

Therefore, Ms. Williams has not adequately alleged the third element of her FDCPA claim, that Wells Fargo engaged in conduct that is prohibited by the FDCPA.

*          *          *

For these reasons, and based on the entire record, the Court finds that Ms. Williams has not stated a plausible claim for violations of the FDCPA. Accordingly, the Motions to Dismiss this claim are granted.

_Whether Ms. Williams States a Plausible Claim Under the FCRA_

In order to state a claim under the FCRA, Ms. Williams must allege that she disputed information in her credit report to a credit reporting agency, that the credit reporting agency notified the entity that furnished the reporting agency with the disputed information, and that the furnisher "'thereafter acted in willful or negligent noncompliance'" by failing to conduct a reasonable investigation of the dispute. _Mund_, 2019 WL 955033, at *2 (quoting _Markovskaya_, 867 F. Supp. 2d at 343).

<u>Whether Ms. Williams Alleges that She Disputed Information in Her Credit Report to a Credit Reporting Agency.</u>  The first element that Ms. Williams must allege to state a FCRA claim is that she disputed information in her credit report to a credit reporting agency.

Here, as with her claim for violations of the FDCPA, Ms. Williams alleges that Wells Fargo and other entities violated the "FCRA . . . by omitting portions of the Order executed by Judge Flug relating to the accuracy of the files of the Defendant Wells Fargo" and that they have "engaged in constructive fraud that deprives the Plaintiff of Rights pertaining to property."  Am. Compl. ¶ 4 at 3.

But Ms. Williams does not allege that she raised a question about any aspect of her credit report to a credit reporting agency.  Nor do her allegations support an inference that that occurred.

Therefore, Ms. Williams has not alleged the first element of her FCRA claim, that she disputed information in her credit report to a credit reporting agency.

<u>Whether Ms. Williams Alleges that the Credit Reporting Agency Notified the Furnisher of the Disputed Information.</u>  The second element that Ms. Williams must allege to assert a FCRA claim is that the credit reporting agency notified the furnisher of the disputed information.

Here, just as Ms. Williams does not allege that she raised a question about any aspect of her credit report to a credit reporting agency, she similarly does not allege that a credit reporting agency notified any of the WF Defendants of such a report.  Nor do her allegations support an inference that that occurred.

Therefore, Ms. Williams has not alleged the second element of her FCRA claim, that a credit reporting agency notified Wells Fargo or any of the WF Defendants of any disputed information in her credit report.

<u>Whether Ms. Williams Alleges that the Furnisher of the Disputed Information Acted Unreasonably in Response.</u>  The third element that Ms. Williams must allege to state a FCRA claim is that the furnisher of the disputed information "thereafter acted in 'willful or negligent noncompliance'" by failing to conduct a reasonable investigation of the dispute.  *Mund*, 2019 WL 955033, at *2 (quoting *Markovskaya*, 867 F. Supp. 2d at 343).

And here again, just as Ms. Williams does not allege that she raised a question about any aspect of her credit report to a credit reporting agency, or that a credit reporting agency notified any of the WF Defendants of such a report, she does not allege that Wells Fargo or any of the WF Defendants failed to conduct a reasonable investigation of the dispute, or otherwise failed to comply with any of the requirements of the FCRA.  Nor do her allegations support an inference that that occurred.

Therefore, Ms. Williams has not alleged the third element of her FCRA claim, that a furnisher of disputed information acted unreasonably in response to a notification of a dispute from a credit reporting agency.

*          *          *

For these reasons, and based on the entire record, the Court finds that Ms. Williams has not stated a plausible claim for violations of the FCRA.  Accordingly, the Motions to Dismiss this claim are granted.

### *Whether Ms. Williams States a Plausible Claim Under TILA*

In order to state a claim under TILA, Ms. Williams must allege that a creditor failed to provide clear, conspicuous, and accurate disclosure of the loan's terms.  Claims under TILA are limited in time, and, in general, must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).

<u>Whether Ms. Williams Alleges that She Did Not Receive Adequate Disclosure of the</u>

Loan's Terms.  Ms. Williams alleges that the Defendants violated TILA when they "initiated a complaint in [Queens Supreme Court] . . . in a consumer credit matter in which the amount in controversy is $532,875.00 contradicts the administrative order 548-10 that also fails to comply with administrative order 431-11?".  Compl. ¶ 2.  She also alleges that she "has reasons to believe the matter is in relation to premises unlawfully foreclosed under color claim of state authority."  Compl. ¶ 3.  And for these reasons, she "seeks maximum damages under TILA . . . twice the value of the original debt").  Compl. ¶ 4.  In substance, Ms. Williams' allegations in support of her TILA claim are based on deficiencies in the Foreclosure Action leading to the entry of the foreclosure judgment.  But this is not the same as alleging deficiencies in the disclosure of the terms of the Loan.

Here, Ms. Williams does not allege that the Defendants failed to "'provide [her with] clear, conspicuous, and accurate disclosures of the loan terms and other material information.'" *Dabydeen*, 2018 WL 3212421, at *4 (quoting *Midouin*, 834 F. Supp. 2d at 102).  And courts have declined to find that a plausible TILA claim has been stated where the plaintiff's allegations were related "to the validity of various documents relevant to the state court foreclosure action, not disclosures in lending."  *Dabydeen*, 2018 WL 3212421, at *4.

Therefore, Ms. Williams has not alleged a plausible basis for her TILA claim, that she did not receive clear, conspicuous, and accurate disclosure of the Loan's terms.

Whether Ms. Williams' TILA Claim Is Timely.  Under TILA, a claim must be brought "within one year from the date of the occurrence of the violation," or in certain specified circumstances not applicable here, "before the end of the 3-year period beginning on the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  Here, Ms. Williams' alleged that she made mortgage payments on the Property beginning June 6, 2008 – so any disclosures

concerning the Loan must have been made before that date.  Second Am. Compl. ¶ 15.  As a consequence, any disclosures concerning entering into the Loan must have been made before that date, and TILA's one-year statute of limitations expired no later than June 2009.  15 U.S.C. § 1640(e).

Therefore, Ms. Williams' allegations show that her TILA claim was not brought timely.

*          *          *

For these reasons, and based on the entire record, the Court finds that Ms. Williams has not stated a plausible claim for violations of TILA.  Accordingly, the Motions to Dismiss this claim are granted.

### *Whether this Court Lacks Subject Matter Jurisdiction To Consider Ms. Williams' Claims Under the Rooker-Feldman Doctrine*

As an alternative basis for relief, the WF Defendants argue that this Court lacks subject matter jurisdiction to adjudicate Ms. Williams' claims.

The *Rooker-Feldman* doctrine provides that "lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment."  *Neshewat v. Salem (In re Salem),* 290 B.R. at 482 (quoting *Hachamovitch*, 159 F.3d at 693).  This doctrine applies if each of the following requirements is established:

> (1) the federal-court plaintiff lost in state court; (2) the plaintiff "must complain of injuries caused by a state-court judgment"; (3) the plaintiff "must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced."

*Buckskin*, 2017 WL 1130166, at *2 (quoting *Green*, 585 F.3d at 101).

Here, Ms. Williams advances six claims.  One is for violations of the automatic stay, and three others arise under federal remedial statutes that apply to borrowers and lenders – the FDCPA, the FCRA, and TILA.  In each of these circumstances, it cannot be said that Ms.

Williams lost the claim in the state court Foreclosure Action, or that she complains of injuries caused by the state court foreclosure judgment, or that she invites this Court to review and reject that judgment.  As a consequence, the *Rooker-Feldman* doctrine and the limits on subject matter jurisdiction that it embodies do not apply to this Court's consideration of those claims.

But Ms. Williams also asserts two claims that have a far closer connection to the state court Foreclosure Action and the foreclosure judgment.  Her first claim is for damages and recovery of her mortgage and property maintenance payments.  And her third claim is for a redetermination of the Foreclosure Action.  The Court considers the elements of the *Rooker-Feldman* doctrine in light of each of these claims in turn.

### *Whether this Court Lacks Subject Matter Jurisdiction To Consider Ms. Williams' Claim for Damages and Recovery of Mortgage and Property Maintenance Payments Under the Rooker-Feldman Doctrine*

Ms. Williams asserts a claim for damages and recovery of the amounts that she paid for her mortgage from June 2008 through November 2017, and for the costs of maintenance and improvements on the Property.

Whether Ms. Williams, the federal-court plaintiff, lost in state court.  The first *Rooker-Feldman* element in the context of Ms. Williams' claim for damages and recovery of her mortgage and property maintenance payments is whether Ms. Williams, the plaintiff here, lost in state court.

Here, the record shows that Ms. Williams lost in state court when that court entered the judgment of foreclosure in the Foreclosure Action on September 17, 2017, in which she was a named defendant.  Her efforts to overturn that judgment were unsuccessful, and a foreclosure sale was held less than a month later, on October 13, 2017.  WF Supp. Mem. at 7.  That

judgment resolved any disputes between the WF Defendants and Ms. Williams concerning her mortgage payments and other payments with respect to the Property.

Therefore, the first element of the *Rooker-Feldman* test, that Ms. Williams lost in state court, has been established.

<u>Whether Ms. Williams complains of injuries caused by a state court judgment.</u>  The second *Rooker-Feldman* element in the context of Ms. Williams' claim for damages and recovery of her mortgage and property maintenance payments is whether Ms. Williams complains of injuries caused by the state court judgment.

Here, the record shows that Ms. Williams complains of injuries that she suffered as a consequence of the Foreclosure Judgment.  She alleges that "this injury" – in substance, the Judgment of Foreclosure and resulting Sheriff's Sale – "deprives my family and self, not only [of] property, but monies paid" in connection with the Loan on the Property.  Second Am. Compl. ¶ 25.

Therefore, the second element of the *Rooker-Feldman* test, that Ms. Williams complains of injuries cause by a state court judgment, has been established.

<u>Whether Ms. Williams invites district court review and rejection of that judgment.</u>  The third *Rooker-Feldman* element in the context of Ms. Williams' claim for damages and recovery of her mortgage and property maintenance payments is whether Ms. Williams invites this Court's review and rejection of the state court foreclosure judgment.

Here, the record shows that Ms. Williams seeks relief that would, in effect, undo the determinations made by the state court in the Foreclosure Action, by revisiting the question of her mortgage payments and other payments with respect to the Property.  And she acknowledges

that the issues raised here, and the issues resolved there, are "directly intertwined with the Foreclosure Action."  Williams Omnibus Mot. ¶ 24; Williams Mot. to Strike ¶ 32 (same).

Therefore, the third element of the *Rooker-Feldman* test, that Ms. Williams invites this Court to review and reject the state court foreclosure judgment, has been established.

<u>Whether the state court judgment was rendered before this adversary proceeding commenced.</u>  The fourth *Rooker-Feldman* element in the context of Ms. Williams' claim for damages and recovery of her mortgage and property maintenance payments is whether the state court foreclosure judgment was rendered before this adversary proceeding commenced.

Here, the record shows that the foreclosure judgment was entered well before this adversary proceeding was commenced.  Wells Fargo points to September 17, 2017, as the date on which the foreclosure judgment was entered.  WF Supp. Mem. at 19.  And Ms. Williams commenced this adversary proceeding nearly a year later, on September 11, 2018.  Additional motion practice, including Ms. Williams' First and Second Motions to Vacate Sale, continued thereafter, and some of those proceedings occurred after this adversary proceeding was commenced.  *See* WF Supp. Mem. at 7-9 (providing chronology of Foreclosure Action and this adversary proceeding).  But that does not change the fact that the foreclosure judgment was rendered before this adversary proceeding commenced.

Therefore, the fourth element of the *Rooker-Feldman* test, that the state court foreclosure judgment was entered before this adversary proceeding was commenced, has been established.

*          *          *

For these reasons, and based on the entire record, the Court finds that under the *Rooker-Feldman* doctrine, it lacks subject matter jurisdiction to consider Ms. Williams' claim to recover

the amounts that she paid in connection with the mortgage on the Property and to maintain or improve the Property.  Accordingly, the Motions to Dismiss this claim are granted.[4]

### Whether this Court Lacks Subject Matter Jurisdiction To Consider Ms. Williams' Claim for Redetermination of the Foreclosure Action Under the Rooker-Feldman Doctrine

Ms. Williams asserts a claim for "the determination of the [Foreclosure Action]."  Second Am. Compl. ¶ 9.

Whether Ms. Williams, the federal-court plaintiff, lost in state court.  The first *Rooker-Feldman* element in the context of Ms. Williams' claim for redetermination of the Foreclosure Action is whether Ms. Williams, the plaintiff here, lost in state court.

Here, as the claim itself reflects, the record shows that Ms. Williams lost in state court when that court entered the judgment of foreclosure in the Foreclosure Action on September 17, 2017, in which she was a named defendant.  Her efforts to overturn that judgment were unsuccessful, and a foreclosure sale was held soon thereafter, on October 13, 2017.

Therefore, the first element of the *Rooker-Feldman* test, that Ms. Williams lost in state court, has been established.

Whether Ms. Williams complains of injuries caused by a state court judgment.  The second *Rooker-Feldman* element in the context of Ms. Williams' claim for redetermination of the Foreclosure Action is whether Ms. Williams complains of injuries caused by the state court judgment.

Here again, the record shows that Ms. Williams complains of injuries that she suffered as a consequence of the Foreclosure Judgment.  She alleges that "this injury" – in substance, the

---

[4]  For substantially the same reasons, and in the alternative, the Court finds that the doctrines of *res judicata* and collateral estoppel would prevent a full consideration of Ms. Williams' claim for damages and recovery of mortgage and property maintenance payments here.

Judgment of Foreclosure and resulting Sheriff's Sale – "deprives my family and self, not only [of] property, but monies paid" in connection with the Loan on the Property.  Second Am. Compl. ¶ 25.

Therefore, the second element of the *Rooker-Feldman* test, that Ms. Williams complains of injuries cause by a state court judgment, has been established.

Whether Ms. Williams invites district court review and rejection of that judgment.  The third *Rooker-Feldman* element in the context of Ms. Williams' claim for redetermination of the Foreclosure Action is whether Ms. Williams invites this Court's review and rejection of the state court foreclosure judgment.

And here too, the record shows that Ms. Williams seeks relief that would explicitly undo the determinations made by the state court in the Foreclosure Action, by substituting this Court's determination of the issues in that case for the state court's foreclosure judgment.

Therefore, the third element of the *Rooker-Feldman* test, that Ms. Williams invites this Court to review and reject the state court foreclosure judgment, has been established.

Whether the state court judgment was rendered before this adversary proceeding commenced.  The fourth *Rooker-Feldman* element in the context of Ms. Williams' claim for redetermination of the Foreclosure Action is whether the state court foreclosure judgment was rendered before this adversary proceeding commenced.

Here, the record shows that more than a year passed from the entry of the foreclosure judgment, on September 17, 2017, to the commencement of this adversary proceeding on September 11, 2018.

Therefore, the fourth element of the *Rooker-Feldman* test, that the state court foreclosure judgment was entered before this adversary proceeding was commenced, has been established.

\*          \*          \*

For these reasons, and based on the entire record, the Court finds that under the *Rooker-Feldman* doctrine, it lacks subject matter jurisdiction to consider Ms. Williams' claim to redetermine the Foreclosure Action.  Accordingly, the Motions to Dismiss this claim are granted.[5]

### *Whether this Court Should Abstain from Considering Ms. Williams' Claims Under the Younger Abstention Doctrine*

As an alternative basis for relief, the WF Defendants argue that this Court should abstain from considering Ms. Williams' claims under the *Younger* abstention doctrine.

The *Younger* abstention doctrine reflects the principle that federal courts should not interfere with the progress of certain types of pending state court proceedings.  As the Supreme Court has stated, the scope of this doctrine extends to "'state criminal prosecutions'", "'civil enforcement proceedings'", and "civil proceedings . . . that 'implicate a State's interest in enforcing the orders and judgments of its courts.'"  *Walker*, 2018 WL 1796543, at \*2-3 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013)).

Here, Ms. Williams advances six claims.  All address important interests, to be sure, including the question of violations of the automatic stay and the protections that arise under federal remedial statutes that apply to borrowers and lenders – the FDCPA, the FCRA, and TILA.  She also asserts two claims that address matters addressed in the state court Foreclosure Action and the foreclosure judgment, for damages and recovery of her mortgage and property maintenance payments, and for a redetermination of the Foreclosure Action.

---

[5]  For substantially the same reasons, and in the alternative, the Court finds that the doctrines of *res judicata* and collateral estoppel would prevent a full consideration of Ms. Williams' claim for redetermination of the Foreclosure Action here.

But none of Ms. Williams' claims address criminal proceedings, or civil enforcement proceedings. Nor would proceeding here implicate or interfere with "a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc.,* 571 U.S. at 72-73. That is, the important state interests that are protected from interference by the *Younger* abstention doctrine are not implicated here.

*          *          *

For these reasons, and based on the entire record, the Court finds that under the *Younger* abstention doctrine, it is not required to abstain from considering Ms. Williams' claims. Accordingly, the Motions to Dismiss these claims on grounds that this Court should abstain pursuant to the *Younger* abstention doctrine are denied.

<u>The Question of Leave To Replead</u>

Federal Rule of Civil Procedure 15, made applicable here by Bankruptcy Rule 7015, states that permission to amend a complaint should be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). As the Supreme Court observed nearly sixty years ago, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

And as this Court has noted, "[w]here a plaintiff has made a single attempt to state a claim, and the prospect of a plausible claim is suggested, but not established, by the allegations, then it may be that a court's discretion should tip in favor of allowing an amendment." *Ridley v. Deutsche Bank Nat'l Tr. Co.* (*In re Ridley*), 453 B.R. 58, 77 (Bankr. E.D.N.Y. 2011). At the same time, this Court has also noted that "'where a proposed amended pleading would not survive a motion to dismiss, it is within a trial court's discretion to deny leave to replead.'" *In re*

*Brizinova,* 554 B.R. 64, 88 (Bankr. E.D.N.Y. 2016) (quoting *In re Ridley*, 453 B.R. at 77). Ultimately, the question of leave to replead is committed to the sound discretion of the court.

Here, to be sure, Ms. Williams has made several attempts to state her claims – in the Complaint, the Amended Complaint, and the Second Amended Complaint.  And even when construed liberally and interpreted "to state the strongest arguments that they suggest," it is clear from the record that Ms. Williams' claims for damages and recovery of her mortgage and property maintenance payments and for redetermination of the Foreclosure Action, as well as her claims under the FDCPA, the FCRA, and TILA, cannot successfully be repleaded.  *Frederick*, 649 F. App'x at 30.  As to those claims, leave to replead is denied.

But with respect to Ms. Williams' claim for relief on grounds that Wells Fargo, Mr. Margarella, and Ms. Jurek violated the automatic stay, the question is a closer one.  The Court has concluded that Ms. Williams has not stated a plausible claim for relief on her stay violation claim, because, among other reasons, she has not identified any plausible damages that were caused directly by the asserted stay violation.  Nor has she identified any plausible grounds to enter an injunction against future violations.  And as to Mr. Margarella and Ms. Jurek, she has not alleged a plausible basis to conclude that they had notice of her bankruptcy petition.

At the same time, the Court has concluded that Ms. Williams has alleged that Wells Fargo took steps in the Foreclosure Action after her bankruptcy case was filed, when the automatic stay was in effect, with notice of the filing of the bankruptcy petition, that concerned property of the estate.  Based on the entire record, the Court is satisfied that the "the prospect of a plausible claim is suggested, but not established," by her allegations.  *In re Ridley*, 453 B.R. at 77.  And as a consequence, leave to replead the claims for violations of the automatic stay against Wells Fargo is warranted.

## Conclusion

For the reasons stated herein, and based on the entire record, Ms. Williams' claims for damages and recovery of her mortgage and property maintenance payments, for redetermination of the Foreclosure Action, and for relief under the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, and the Truth in Lending Act, are dismissed with prejudice in their entirety and without leave to replead.

Ms. Williams' claims for violations of the automatic stay are also dismissed, and leave to replead these claims against Wells Fargo is allowed. Those claims are dismissed with prejudice and without leave to replead with respect to Mr. Margarella and Ms. Jurek.

An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.

**Dated: Brooklyn, New York**
**June 18, 2020**

_Elizabeth S. Stong_
**Elizabeth S. Stong**
**United States Bankruptcy Judge**